Nicholson, C. J.,
delivered the opinion of the court.
Baxter sued Mabry, Griffith and others in the Circuit Court of Knox county, for damages to his character, on account of a libellous publication. The original writ was executed on Mabry, who resided in Knox, and counterparts were served on Griffith and others, who resided in Davidson county. Declaration was filed at the appearance term and Mabry pleaded not guilty — the other defendants jointly filed the same plea — on both of which there was issue. While the cause was thus at issue and ready for trial, the Legislature, on the 11th of December, 1871, passed an Act, by which it was enacted, “that in all such suits that may hereafter be instituted, or that may be now pending in any of the courts of the State, each defendant therein, at any time before trial or final judgment, shall have the right, upon motion, to sever and have the suit as to himself separately tried, and the causes after such severance shall stand against each defendant in all respects as if originally instituted separately against him or them, and without regard to the proceedings that may have been had in the cause before severance; and each defendant, after severance, shall be entitled to make his defense - and upon all grounds by answer, motion, plea or demurrer.”
By the second .section, “ in all causes now pending or that may hereafter be instituted, wherein any one or more of the defendants thereto shall avail themselves of the right to sever, any defendant so severing, who may have been, at the commencement of the suit, a *684 resident of any other county of the State, shall be entitled to have the same, as to himself, removed to the county of his residence — the removal shall be ordered upon the written application of the party desiring it — the application shall set forth the name of the county wherein the petitioner resides and shall ask for the removal, as to himself, to a like court of said county, then to be proceeded with as if originally instituted there.”
At the February Term, 1872, all the defendants, except. Mabry, severally petitioned and moved for severance, and for removal of the cause to the county of their residence. This motion was disallowed and the petition dismissed, and the defendants so applying have appealed, as authorized by the 4th section of said Act. The question is, whether the Circuit Judge erred in refusing the motion to sever and transfer the cause It is not denied that the petitioners brought themselves within the provisions of the Act and were entitled to the severance and transfer, if the Act of the Legislature was constitutionally passed.
As to the prospective feature of the Act, no exception is taken so far as its constitutionality is involved; but the question is, whether the provisions of the Act, in so far as they apply to suits then pending, so interfere with the rights of the plaintiff in this case as to render the Act void on account of want of power in the Legislature to enact it?
It is clear that the right to sue for injuries to character is secured to any citizen, and the State is bound to provide the necessary courts and to keep *685 them open, that this right may be freely exercised and enjoyed. When the plaintiff instituted his suit in this case he was in the exercise of a constitutional right, and the law then in force furnished him the means of prosecuting his right through the Circuit Court of Knox county, in which one of the defendants resided.
The law also authorized him to unite in his suit the other defendants, who resided in a different. county, and to bring them all by means of counterpart writs to the county of Knox. The law gave him the remedy of a joint action against all defendants and provided the means by which his right to a joint action might be effectuated. He had availed himself of this right and of the remedy provided, and had brought all the defendants into the Circuit Court of Knox county, and they had there appeared and made up the issue in the .suit. The law authorized the defendants to make separate or joint defense. All of them, except Mabry, elected to unite in a joint plea of' not guilty — Mabry elected to plead separately.
If the cause had come to a trial, each of the defendants would have had the right to apply for a severance and a separate trial, and upon good cause shown the presiding judge in his discretion would have allowed the application. A severance and separate trial would not have been a. matter of right but a matter' for the sound discretion of the court, exercised upon the merits of the application. The right to severance however, upon good cause shown, does not involve the right to a change of venue to the county of the residence of -the defendant. That is a new *686 right conferred by the Act in question. If the suit had been tried on the issue made up, the jury would have acquitted some of the defendants, and found o tliers guilty, and they would have assessed separate and different amounts' of damages against the several defendants found guilty. Upon a verdict finding different amounts of damages against different defendants, the plaintiff could have satisfaction only as to one amount, and it would have been in his election as to which amount, and by which defendant he would have satisfaction.
Such were the relative rights and remedies of the parties to the suit when the Act under consideration was passed. The question recurs: Are the alterations made by that Act, affecting their rights and remedies, such as to bring the Act into conflict with the fundamental law? We recognize the- rule of law as to the alteration of remedies, as laid down by Lwarris on Statutes, 472, as sound, viz : “ Whatever belongs merely to the remedy may be altered according to the will of the State, always provided the alteration does not impair the obligation of the contract; but if a statute so change the nature and extent of an existing remedy as materially to impair the rights and interests of the owner of property, it is just so much a violation of constitutional provisions, as if it directly overturned his rights and interests. If the remedy does not impair the right or property itself; if it still leaves the party a substantial remedy according to the course of justice as the right existed at the time of the passage of the statute; it does not impair-the obligation of the *687 ■contract, nor will it be held to do so, merely because the new remedy is less efficient, less speedy, or less •convenient than the old one.”
It is observed that this rule is laid down with special reference to the alteration of remedies which •affect the rights growing out of contracts and the interests secured by the obligations thereof. But the right to obtain damages for injury to reputation stands upon the same ground with rights as to property, and therefore the rule may be received as applicable to alterations of the existing remedies for obtaining satisfaction for injured reputation as well as in cases where property dependent upon contract is involved. The rule then by which we are to determine whether the Act is constitutional or not, is, does it still leave the plaintiff a substantial remedy, according to the course of justice, as the right existed at the time of the passage of the statute ? .
'We have seen that while the Act of Assembly secures to the plaintiff his right to prosecute his suit to final judgment against all the defendants and in a court "having the same jurisdiction in which his suit was brought, and in those respects secures to him a substantial remedy, yet that it necessarily subjects him to delay, inconvenience, and expense in the final adjudication? of his rights. It is laid down in the authority quoted, that it will not be held that the rights of the plaintiff are impaired, merely because the new remedy is less efficient, less speedy, or less convenient than the old one. But it will be observed that by the same authority it is said, that the Act “ must leave *688 the party a substantial remedy according to the course of justice, as the right existed at the time of the passage of the statute.” Interpreting the whole extract from Dwarris together, we understand it to menu, that while the new remedy may be less efficient, less speedy and less convenient than the old, yet the statute providing the new remedy will not be unconstitutional, if it provides a substantial remedy according to the course of justice, as the right existed at the time of the passage of the Act. It would follow, that where the right exists when the new remedy is prescribed, but no suit has been brought to enforce it, then the new remedy would not be unconstitutional, because less efficient, less speedy or less convenient,. than the old one in force when the right accrued. But where the plaintiff has commenced his suit, in accordance with existing laws as to remedy, if a statute is then passed changing the remedy, it must be substantially the same as that in force when his suit was commenced.
The question then would be, is the remedy provided by the Act in question substantially the same as that in force when the suit was instituted ?
We have already pointed out the alterations made in the remedy by the statute — it deprives the plaintiff of his remedy by joint judgment against all the defendants, at the election of each of the defendants, without regard to the discretion of the presiding judge; it confers upon each defendant the absolute right to a severance, on motion, and thereby necessarily takes from the plaintiff any right to object and from' the .judge any discretion as to allowing the motion: it sets *689 aside the pleas filed and gives to each defendant the right to plead de novo; it gives to each defendant the absolute right, upon swearing that he is a resident of Davidson county, to remove the cause for trial to that county, and to this the plaintiff has no right to set up any objection and the judge has no discretion, but the statute commands him to make the order of removal. By the law as in force when the suit was instituted, no change of venue could be made except for specific causes, and then only to the nearest county. By the new remedy provided, the change of venue to a remote county is authorized upon the simple fact that the defendant lives in a remote county, and upon making affidavit to this fact, the change is ordered by the statute to be made by the judge. It appears impossible to hold that, in view of these alterations in rights of the parties as plaintiffs and defendants, the provisions of the statute furnish to the plaintiff a remedy substantially the same as that which the law furnished to him when he instituted his suit.
But there is another view of this case in which there are grave considerations, which seem to us to settle the question of constitutional power against the action of the Legislature. It is essential to the maintenance of republican government, that the action of the legislative, judicial and executive departments should be kept separate and distinct, ■ as it is expressly declared it shall be, by the Constitution, Art. 2, secs. 1 & 2. The most responsible duty devolving upon this court is to' see that this injunction of the Constitution shall be faithfully observed. We have no right to go out *690 side of statutes presented for our examination and adjudication, to look into the motives for their enactment. We are to confine ourselves to the provisions of the statute itself, and in our decisions we are to presume that the Legislature not only acted upon consideration of public good, but that they have acted within the sphere of their legitimate powers. Conceding all this, we are bound, on the other hand, whenever in our deliberate judgment these legitimate powers have been transcended, to interpose for the protection and preservation of the Constitution.
It was said by Chief Justice Marshall, in Hyman Southard, 10 Wheat., 46, that “the difference between the departments, undoubtedly is, that the legislative makes, the executive executes, and the judiciary construes the law.” To adjudicate upon, and protect, the rights and interests of individual citizens, and to that end to construe and apply the terms, is the peculiar province of the judicial department. It is not always an easy task to determine whether an Act of the Legislature is judicial or legislative in its character. Perhaps it may .be correctly said, that that which distinguishes a judicial from a legislative act is, that the one is a determination of what the existing, law is iii relation to some existing thing already done or happened, while the other is a pre-determination of what the law shall be for the regulation of all future cases falling under its provisions. Const. Law, 91; Bates v. Kimbald, 2 Chip., 77. According to' this definition, it is clear that the Act in question, so far as it is intended to operate prospectively, is a legislative • act. *691 But as to that portion, of it which relates to suits pending when it was passed, it is not so clear, whether it is legislative or judicial.
The Act in question is legislative in form, but it operates expressly on suits pending in courts. It not only gives to defendants in sucK suits defensive remedies which they did not have before, but it prescribes the character of proceedings to be taken in court' by defendants to avail themseves of their new defensive, rights. To obtain a severance — a new right conferred— they are to make a motion in court — this motion must be acted on by the judge and a record made, that 'upon motion of defendant, he is entitled to a sever■ence and a separate trial, the judge makes the order nominally, but as he has no discretion and he acts under the order of the legislature — it is, therefore, to all intents and purposes, the act of the Legislature.
Again — after having secured a severance by the process of motion and judgment of severance, the Act then authorizes him to file his petition, stating that he is a citizen of Davidson county, and after swearing to it, he is entitled to have the same removed to Davidson county — and the Act says, “the removal shall be ordered.” Of course this can only be done by a judgment of the court — it is upon such judgment of severance- and of removal that the Circuit Court of Davidson is to take jurisdiction. But in such judgment, it is not the judgment of the presiding judge— he is allowed no discretion whether the severance or the removal is to be allowed — he is commanded to give the judgments, and the exact judgments to be *692 given are prescribed by the Legislature. We are of opinion that these are judicial acts of the Legislature.
Judge Cooley, p. 95, of his work on Const. Law, says: “ If the Legislature cannot thus indirectly control the action of the courts, by requiring of them a construction of the law according to its own views, it is very plain it cannot do so directly, by setting aside Their judgments, compelling them to grant new trials, ordering the discharge of offenders, and directing what particular steps shall be taken in the progress of a judicial inquiry.” For this last remark, he quotes opinions of judges on the Dorr case, 7 R. I., 299, and various other cases, among them Burt v. Williams, 24 Ark., 91, in which it was held, that “the granting of continuances of pending cases was the exercise of judicial authority, and a legislative act assuming to do this was void.”
In the case of Murrill v. Sherbam, 1 N. H., 204, Judge Woodbury states the law as follows: “It is the province of Judges, to determine what is the law upon existing cases. In fine, the law is applied by the one and made by the other. To do the first, therefore— to compare the claims of parties with the law of the land before established — is in its nature a judicial#act. But to do the last — to pass new rules for the regulation of new controversies — is in its nature a legislative act; and if 'these rules interfere with the past, or the present, and do not look wholly to the future, they violate the definition of a law, as a rule of civil conduct; because no rule of conduct can with consis *693 •tency operate upon what occurred before the rule itself was promulgated.”
Upon both grounds, therefore — first, because the Act in question does not furnish plaintiff with a remedy ■substantially the same with that which was in force when the suit was commenced; and second, because the Act as it relates to pending suits is judicial in its ^provisions, we hold that it is unauthorized by the 'Constitution, except as to its prospective provisions. We have already remarked that we have nothing to do with the motives which induced the enactment of the statute in question, nor can we regard any discussion of these motives or of those of the Governor in his approval of the Act, as legitimate in determining its validity. We are constrained, therefore, to express our unqualified disapprobation of many exceptionable and reprehensible reflections upon the motives of the Legislature in passing the statute, and upon the Governor of the State for approving it, which we find in a printed argument for the defendant in error, read on the trial of the cause, and furnished to the court. The questions raised in the record are of a character not calling for or justifying such a course of remarks; and there is certainly nothing in the record which can be considered as authorizing any imputations of improper motives. This much we deem it proper to say by way of expressing our disapprobation of the unauthorized attack upon the motives of co-ordinate branches of the State Government. In considering the case, we have not regarded those portions of the argument indicated as irrelevant and exceptictoable, as properly *694 before us, but as constituting no part of the legitimate proceedings in' the case.
The judgment of the Circuit Court is affirmed.
Turney, J. dissented.
On 10th September, 1870, John Baxter instituted' his action of trespass on the case for libel, against Jos. A. Mabry, John C. Burch, J. O. Griffith, John Miller McKee, Ira P. Jones and James T. Bell, in. the Circuit Court of Knox county.
The original writ was executed upon Mabry. Counterparts were issued to Davidson county, the place of residence of the other defendants, and there executed, upon them.
At the October Term, 1870, of the Circuit Court for Knox county, a declaration was filed. To this, declaration, Mabry separately and the other defendants jointly pleaded not guilty. At the June Term, 1871, the cause was continued at the instance of defendants. At October Term, 1871, the cause was continued because of the absence of the attorney of Mabry. At-the October Term, 1871, the only step in the cause,, was an order, that notice served on A. Caldwell, Esq., to take depositions should be sufficient, except as to Mabry. On the 11th December, 1871, the Legislature passed an Act, which provides:
Sec. 1. Be it enacted by the- General Assembly of' the State of Tennessee, That in all suits for damages, done the character of any person, that may hereafter-be instituted, or that may be now pending in any of the courts of this "State, each defendant therein, if there *695 be more than one, at any time before the trial of the cause • and final judgment therein, shall have the right, upon motion made in person or by attorney, to sever and have the suit as to himself separately tried, and the causes after such severance shall stand against each defendant in all respects in the same condition as if originally instituted separately and alone against him or them, and without regard to the proceedings that may have been had in the cause before severance. Each defendant, after severance, shall be entitled to make his defense anew upon all grounds by answer, motion, plea or demurrer.
Sec. 2. Be it further. enacted, That in all causes now pending, or. that may be hereafter instituted in any of the courts of this State, wherein any one or more of the defendants thereto shall avail themselves of the right to sever, as provided in the first section of this Act, then in that event, any defendant so severing, who. may have been at the commencement of the suit a resident of any other county of the State than the one wherein said suit is pending, and who may have been made a party thereto by service of original or counterpart summons, or otherwise, shall be entitled to have the same, as to himself, removed to the county of his residence. The transfer and removal shall be ordered by the court upon the written application of the party desiring it, which shall be presented by attorney in open court. The said application shall set forth the name of the county wherein the petitioner resides, and shall ask for the removal of said cause, as to himself, to a like court of said *696 county, then to be proceeded with as if originally instituted there. Said application may be sworn to before the clerk of any county, or before any officer empowered under the law to administer oaths.
Sec. 3. Provides for the making out and. transmission *of a transcript, etc. (This Act was approved by the Governor on 14th December, 1871.)
At February Term, 1872, the defendants, except Mabry, severally moved for severances and petitioned for transfers of the cause to the county of their residences, which were disallowed and dismissed by his Honor, the Circuit Judge, and the defendants have appealed to this court, as is provided may be done in the 4th section of the Act referred to. The single question presented to us is, Is the Act constitutional?
It is insisted the statute violates that part of sec. 17 of the bill of rights, in the language: “That all courts shall be open, and every man for any injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial .or delay.”
We enquire, first, is there anything in the Act, contravening the declaration, “all courts shall be open?” I answer, nothing. There is no creation of a new court — no conference of a new, nor modification of an old jurisdiction. The jurisdiction of the subject matter remains in the same (the Circuit) Court, where it was at the commencement of the suit — the Circuit Court of Davidson county is originated, organized and regulated by the same general law as the Circuit Court of Knox; the terms are the same in number per annum; their *697 rules of practice in every particular identical; each is, as it must be, kept open under the Constitution, and the enabling statutes applicable to both alike; their times of sitting are prescribed by law for regular days of commencement, the one having no preference over the other, and none of these rights or regulations are impinged by the Act in question.
Next, under this statute can the defendant in error have his remedy by due course of law, and right and justice administered without sale, denial or delay?
In determining this question, we are to bear in mind, that provision is made as much for the defendant as the plaintiff, and if the Legislature in its wisdom shall conclude that a state of facts exists that will prevent the administration of a remedy by due course of law, and right and justice then, has it or not the constitutional authority to legislate upon the subject to an extent producing the administration of the remedy provided by the Constitution. The Constitution and laws made under it are blind to the relation of parties, and when it is declared that a party injured, etc., shall have remedy by due course of law, and right and justice, it means law and right and justice to the defendant as well as to the plaintiff. If there shall exist such untoward circumstances as make it palpable that a plaintiff not only can, but will recover not only all he is entitled to, but excessively more, is it to be insisted or even said, that law and right-and justice have been administered? Certainly not; for in such case he, (the plaintiff), is recovering and taking that which in law does not belong *698 to him, and which in right and justice he must not have. How, then, is the evil to be remedied? By legislation only; and of course, it is the duty of the Legislature to declare, and of the courts to interpret, the law. When the Constitution defines and proclaims a right, it is the province of the Legislature to enact statutes for the effectuation of that right, and the duty of courts to maintain it by the enforcement of the statutes. These things existing, demanding legislation, to secure and guarantee constitutional rights, (and their existence is a question for the Legislature and not for the courts), and if the legislation shall be had, is it to be determined, that because the effect of such legislation is. to postpone a final, trial, that therefore a remedy by due course of law and right and justice is not administered without sale, denial or delay? Most assuredly not.
It is the purpose of the Constitution to secure right and justice; and whatever time long or short, reasonably employed to attain these ends it may be necessary to consume, is no delay, and the waiting such time by the courts is no denial.
It is not the husbanding and economizing of time, but the attainment of' justice and right, that enlists the solicitude of the Constitution. If this were not so, then a plaintiff may have service of his writ, file his declaration, and demand a trial at the first moment of the opening of a court on the first day of its terms, without opportunity to his adversary to prepare his defenses, that justice and right might be ad-ministei'ed, and failing to get his demand, the plaintiff would be delayed and denied.
*699 It is next insisted, the legislation affects the right as well as the remedy, in that the suit had progressed to a perfection of the pleadings, had been several times continued, and was ready for trial when the applications to sever and transfer were made.
I am unable to see any legal force in this argument. The severance and transfer do not dismiss the defendant in error from court, nor give him a less effective forum: — his right to remain in court and to prosecute his remedy by due course of law is left to him intact and unembarrassed, that remedy being never the less operative.
. It is a misconception, to maintain that the plaintiff' in error had a vested right to continue to prosecute-the suit in the court in which it was originally instituted. Such rule would not only do away with all right to change of venue, but would defeat the Constitution by preventing “remedy by due course of law and right and justice administered without sale, denial or delay” — it- sometimes occurring that in civil cases even, public opinion is so settled upon the one side- or the other, that right and justice could not be had in the county of inception.
The vested right of the defendant in error is confined to the right of instituting and prosecuting his suit or' suits, the Legislature, pointing out the forum. The vested right, as defined, is so, because the organic law has declared it right. To the prospect of a recovery there can be no vested right — because it is a matter of inquiry and future determination, ripened' into a right by trial and judgment, by which, only, it becomes vested*
*700 The objection of delay, inconvenience, additional ■costs and expense, can have no weight with the court— they are arguments to be addressed to the law makers and not to its interpreters.
The question here, is settled by the rule laid by Dwarris in his Treatise on Statutes and Constitutions, which has been several times adopted by this court, and is the doctrine enunciated by all standard authors who have addressed themselves to the subject:
“ Whatever belongs merely to the remedy, may be altered according to the will of State, always provided the alteration does not impair the obligation of the contract; but if a statute so changes the nature and extent of an existing remedy as materially to impair the rights and interests of the owner of property, it is just as much a violation of constitutional provisions, as if it directly overturned his rights and interests. If the remedy does not impair the right or property, itself — if it still leave the party a substantial remedy according to the course of justice, as the right existed at the time of the passage of the statute, it does not impair the obligation of the contract, nor will it be held to do so, m&i'ely because the new remedy is less efficient, less speedy, or less convenient than the old one.” p. 472.
I have carefully examined and considered the multitude of authorities cited by defendant in error, and am unable to find any substantial conflict with this opinion, and therefore dissent from the opinion of the majority of the court upon the question of law.